# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>GARY MILLS,<br><br>Defendant, | Crim. No. 17-122<br>Judge Nora Barry Fischer |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>$5,899.79 FORMERLY CONTAINED IN PNC BANK ACCOUNT #xxxxxx4718, et al.,<br><br>Defendant, | Civ. No. 15-1274<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION

This matter returns to the Court to resolve pretrial disputes between the parties in this criminal tax case against Gary Mills and a related civil forfeiture action which has been stayed pending the disposition of the criminal case. Although the parties were able to narrow some of their discovery disputes,[1] the Government opposes the remaining issues set forth in Defendant's Motion for Additional Discovery filed in the criminal case, (Crim. No. 17-122, Docket No. [109]), and his Motion/Application for *Luis* Hearing filed in the civil forfeiture action, (Civ. No. 15-1274,

---

[1] In a Status Report filed on August 24, 2018, the parties advised that the following issues were moot and Defendant withdrew the requests, without prejudice: "early production of government summary exhibits, issues concerning the production of the expert report, clarification of a memorandum made by prior counsel Tim Lyons, disclosure of statement from Bill Hall, and disclosure of all records seized pursuant to the search warrant." (Crim. No. 17-122, Docket No. 129).

Docket No. [14]). In short, Defendant seeks a pretrial hearing under *Luis* to challenge the probable cause findings related to six bank accounts which are restrained by Court Orders and the release of $107,000 to fund his defense from such accounts; early disclosure of Jencks materials; and an unredacted version of a memorandum from Matthews International. (*Id*.). As noted, the Government opposes all of the requested relief. The motions have been exhaustively briefed and argued by the parties as the Court received pre-hearing briefing, heard oral argument at a motion hearing held on August 8, 2018, the official transcript of which has been filed with the Court, and accepted post-hearing supplemental briefing submitted by the parties, the last of such filings being made on October 22, 2018.[2] (*See* Crim. No. 17-122, Docket Nos. 109, 118, 121, 129; Civ. A. No. 15-1274, Docket Nos. 14, 21, 22, 29, 30, 31, 33, 36, 39, 41, 44). After careful consideration of the parties' arguments and for the following reasons, Defendant's Motions are DENIED, without prejudice.

As the Court writes primarily for the parties, and many of the facts relevant to this matter are set forth in the Court's Memorandum Opinion of March 19, 2018, (Crim. No. 17-122, Docket No. 84), the Court focuses on its analysis of the disputed legal issues, starting with the request for the *Luis* hearing and the release of funds from the restrained accounts.

### A. Motion for Luis Hearing and Release of Funds from Restrained Accounts

The parties have raised and identified numerous disputes as to the defense request for a *Luis* hearing and release of the restrained funds but the Court finds that Defendant's motion can be resolved by answering two essential questions:

- first, whether the defense must make a showing of financial need in order to obtain such a hearing after *Luis* and a number of other decisions cited by the defense or if the *Farmer-Jones* framework previously adopted by the Third Circuit requiring such a showing

---

[2] The Court notes that "the parties agree[d] that all speedy trial deadlines should be postponed until the Court rules on the Luis motion." (Docket No. 129 at 3).

- should continue to be employed, as advocated by the Government; and,

- second, whether the defense has made such a showing based on the evidence presented at this stage of the case.

Having carefully considered the parties' positions as to these issues, in light of all of the facts and circumstances of this case, the Court holds that the *Farmer-Jones* framework should be applied to evaluate this motion and that Defendant has failed to demonstrate a sufficient financial need to warrant a <u>pretrial hearing</u>, i.e., he has not shown that his Sixth Amendment right to counsel is being impaired by the restraint of the six bank accounts. The Court's rationale follows.

By way of background, "[u]nder the Sixth Amendment, [a defendant] has a right to counsel that he can afford to hire, but he does not have a right to the release of funds subject to forfeiture to obtain counsel of his choice." *United States v. Thomas*, 440 F. App'x 148, 151 (3d Cir. 2011) (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626–33, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989)). Stated another way, "[a]lthough the Sixth Amendment grants a defendant the right to obtain counsel of his choice, this right 'does not extend beyond the individual's right to spend his own legitimate, nonforfeitable assets.'" *United States v. Yusuf*, 199 F. App'x 127, 132 (3d Cir. 2006) (quotations omitted). Forfeiture law distinguishes between assets which are tainted, such as the proceeds of a crime, making them directly subject to forfeiture and other assets which are not tainted but subject to forfeiture only as a "substitute asset" because the tainted assets are no longer available. *See e.g., Honeycutt v. United States*, 137 S. Ct. 1626, 1632, 198 L. Ed. 2d 73 (2017). The pretrial restraint of tainted assets upon a finding of probable cause that the assets will be subject to forfeiture is Constitutionally permissible. *See also Kaley v. United States*, 571 U.S. 320, 134 S.Ct. 1090, 1095, 188 L.Ed.2d 46 (2014) ("In *Monsanto*, our principal case involving this procedure, we held a pre-trial asset restraint constitutionally permissible whenever

there is probable cause to believe that the property is forfeitable. That determination has two parts, reflecting the requirements for forfeiture under federal law: There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." (internal citations omitted)). In *Luis*, the Supreme Court held that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis*, 136 S.Ct. at 1088.

The threshold issue here is whether the *Farmer-Jones* framework should be applied by this Court when evaluating Defendant's request for a pretrial hearing and the release of restrained funds for defense purposes. Pursuant to this approach, "a due process hearing is required if the defendant: (1) demonstrates to the court's satisfaction that [he] has no assets, other than those restrained, and (2) makes a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." *Yusuf*, 199 F. App'x at 132-33 (internal quotations omitted). If the hearing is held, its scope "is limited to the traceability of the restrained assets" and "the government need not reestablish probable cause to believe that [the defendant is] guilty of the underlying offense." *Id.* The Court finds that the *Farmer-Jones* framework must be applied for several reasons.

First, *Luis* did not change the law of the Third Circuit, which had previously held that "substitute assets are not subject to pretrial restraint." *United States v. Pantelidis*, 335 F.3d 226, 234 (3d Cir. 2003) (citing *In re Assets of Martin*, 1 F.3d 1351 (3d Cir. 1993)) (other citations omitted). At the time *Luis* was decided, the Fourth and Eleventh Circuits were the only Circuits to permit pretrial restraints of substitute assets and the Supreme Court reversed an order by the Eleventh Circuit. *Luis*, 136 S.Ct. at 1088. *Honeycutt* essentially recognized the same principle,

holding that there was no statutory basis for the imposition of joint and several liability for forfeiture judgments pursuant to 21 U.S.C. § 853(a). *Honeycutt*, 137 S.Ct. at 1635.

Second, as the Government advocates, Courts in the Third Circuit have endorsed the *Farmer-Jones* framework for analyzing such claims both prior to and after *Luis* was decided. *See e.g., Yusuf*, 199 F. App'x 132-33; *United States v. Fuhai Li*, No. 3:16-CR-00194, 2018 WL 1299724, at *10 (M.D. Pa. Mar. 13, 2018). Numerous Courts outside the Third Circuit have continued to apply the *Farmer-Jones* or a similar approach after *Luis* and/or *Honeycutt* were decided. *See e.g., United States v. Kahn*, 890 F.3d 937 (10th Cir. 2018) (applying *Farmer-Jones* analysis); *United States v. Johnson*, 683 F. App'x 241, 248-50 (4th Cir. 2017) (same); *United States v. Singleton*, 2018 WL 5075982, at *49 (E.D. Ky. Mar. 20, 2018) (listing numerous cases for same proposition). In light of this authority, this Court sees no reason to depart from the settled analytical framework absent directives from the U.S. Court of Appeals for the Third Circuit or the Supreme Court to do so.

Third, while Defendant maintains that the Court should hold that he does not need to make a showing of financial necessity in light of the Supreme Court's decisions in *Luis* and *Honeycutt*, and non-binding authority from the Fourth Circuit in *United States v. Chamberlain*, 868 F.3d 290 (4th Cir. Aug. 18, 2017), and the U.S. District Court for the Eastern District of Virginia in *United States v. Miller*, 295 F. Supp. 3d 690 (E.D. Va. Mar. 8, 2018), such decisions are distinguishable from the instant matter. To this end, the Government conceded in each instance that substitute or untainted assets had been restrained. *See id*. It also appears that the impairment of the defendants' Sixth Amendment rights was not at issue in *Luis*, *Honeycutt* and *Chamberlain*. *Id*. Although the Court in *Miller* noted that a pretrial restraint of untainted assets was deemed illegal under Fourth Circuit law, the Court continued that when the defendant's right to counsel is not being impaired

by the pretrial restraint of assets, it affects the "urgency" of the motion and the timing of the decision. *Miller*, 295 F. Supp. 3d 690, 696, n.5 ("The question whether defendant needs the funds at issue for his legal defense simply affects whether there is an additional Sixth Amendment concern associated with the pretrial restraint of the assets and adds to the urgency of the motion."). Given same, this Court does not interpret *Miller* as requiring a pretrial hearing in all instances where a defendant challenges whether the Government has secured a pretrial restraint of untainted assets.³ Rather, if the defendant cannot make a showing of financial need, then the Court need not hold the hearing in advance of trial.

Having determined that the *Farmer-Jones* framework should be utilized to evaluate Defendant's motion, the Court now applies that test. To reiterate, it is Defendant's burden to show both a financial need of access to the restrained funds to pay his counsel of choice; and, a *prima facie* case that the U.S. Magistrate Judge erred in finding probable cause that the amounts in the challenged accounts represent proceeds from Cindy Mills' embezzlement schemes. *Yusuf*, 199 F. App'x at 132-33. At this juncture of the case, the Court is not persuaded that Defendant has sufficiently demonstrated a financial need for the funds in question and, thus, declines to presently consider the second prong of the *Farmer-Jones* test in detail.

"A hearing on a pretrial challenge to the seizure of assets is not barred under the first prong […] just because the defendant has some unseized assets. The test is whether the defendant lacks sufficient unseized assets to pay for the reasonable cost of counsel of choice." *Kahn*, 890 F.3d at

---

³ The Court notes that the urgency here is lessened by the fact that Defendant agreed to stay the civil forfeiture action due to his assertion of his Fifth Amendment right to self-incrimination in October of 2015 and he has made no effort to set aside the stay of the ancillary forfeiture proceedings in Cindy Mills' case which was ordered on July 31, 2017. (*See* Civ. A. No. 15-1274, Docket No. 6; Crim. No. 17-19, Docket No. 35). Defense counsel also took on this representation knowing that access to these funds would be a significant issue, raising the matter in correspondence to the prosecutor, dated May 22, 2017 to which the Government responded on June 6, 2017. (*See* Civ. A. No. 15-1274, Docket No. 33-5).

939. Such a determination naturally has two parts that the Court must consider, i.e., the reasonable cost of counsel to defend this case and, the value of the defendant's available assets.

Initially, in his moving brief, Defendant requested access to at least $97,000 in attorneys' fees and also sought an additional $10,000 to cover expenses associated with one of his properties, for a total of $107,000. (Civ. A. No. 15-1274, Docket No. 14). As is noted in the declaration of defense counsel, these requested amounts were made without accounting for approximately $30,000 of funds which were in an account jointly held by Defendant and his wife, Cynthia Mills, but she had refused to sign the check. (Civ. A. No. 15-1274, Docket No. 21). But, Defendant subsequently obtained Orders from the Court of Common Pleas authorizing him to cash two checks totaling $31,849.14 (i.e., $30,059.17 and $1,789.97), providing him access to these funds. (Docket No. 33). Therefore, the Court must reduce the requested amount to a total of $75,150.86 ($107,000 less $31,849.14).

Moving on, it is this Court's opinion that the defense's proposed trial budget of $200,000 is significantly inflated and does not represent a reasonable estimate of the true cost to defend this case. *Id.* Most notably, the amount of funds ($112,000) estimated for the lead defense attorney's time in trial preparation and during trial is based upon an unrealistic three-week estimate of the Government's case-in-chief provided by the prosecutor and neither lead attorney believes that the trial of this case will actually take a full four weeks. (*See Jed Silversmith, Esq. declaration*, Civ. A. No. 15-1274, Docket No. 21 at ¶ 7 ("I have tried many tax cases and I worked in an office where all of my colleagues only tried criminal tax cases. I have never heard of a case of this relative simplicity taking more than six or seven days in total – even seven days would be extremely uncommon."); Crim. No. 17-122, Docket No. 130 at 29-30 (AUSA Shardul Desai stating that the 3-week trial estimate was made "out of an abundance of caution" and was provided

so that the Government did not "mess up the Court's schedule" by providing a low estimate as had been done in another, unrelated matter)). Similarly, Defendant has suggested that co-counsel second chair this trial with an undefined role at a substantial cost of $50,000 based on the same lengthy estimate.[4] (Civ. A. No. 15-1274, Docket No. 21 at ¶ 20). Defendant also seeks an additional $19,000 in "contingencies" which is described only as "sentencing, etc." but appears to be prematurely made at this pretrial stage of the case. (*Id.*). All told, when the Court uses a more realistic estimate of two weeks for the trial, reduces the attorney fee time by half and also excludes the "contingencies," the trial budget is reduced to a much more reasonable figure of $100,000.

As to the available assets, Defendant admitted initially that he had $103,000 of "funds on hand" but such figure did not include $31,849.14 in the two checks that he was subsequently authorized to sign; $7,000 he held in other bank accounts; and his interest in three parcels of real estate he jointly owns with his wife. (*See* Docket No. 21 at ¶ 20). When viewed in the context of the revised trial budget of $100,000, Defendant has access to significant amounts of cash to fund his defense without considering the value of the real estate, which presents a separate dispute between the parties.

As to this issue, the parties debate whether the lis pendens notices issued by the Government against the properties constitutes a pretrial restraint under the law and what value the Court should place on his interest in the properties. Defendant admits that the real estate has a total market value of at least $611,600, with only one of the properties carrying a total of $135,000 in debt and outstanding fees, leaving approximately $476,600 in equity in the properties. (Civ. A.

---

[4] In addition, the Court lacks sufficient information to evaluate the reasonableness of this request because the Court was advised at a prior hearing that this individual was not even entering an appearance in the matter as he did not defend criminal cases and was not comfortable taking on a lead role in a criminal matter. (*See* Crim. No. 17-122, Docket No. 76 at 9-10). An appearance was later entered at the direction of the Court. (Crim. No. 17-122, Docket No. 63).

No. 15-1274, Docket No. 20). Half of the equity may be attributable to him, i.e., $238,300 and the other half to his wife, who has forfeited her interest to the Government as part of her criminal case. In short, if the value of the real estate is considered, then Defendant cannot prevail on his *Luis* motion even if his $200,000 trial budget was accepted by the Court, which it is not for reasons described above.

As a legal matter, "[a] notice of lis pendens simply serves to notify prospective purchasers or other interested persons who are not parties to the suit that particular property is the subject of pending litigation." *United States v. Thomas*, 440 F. App'x 148, 152 (3d Cir. 2011). This type of notice does not prevent a sale or constitute a lien on the property such that many courts examining them have concluded that this type of notice does not constitute a pretrial restraint. *Id.* (citations omitted). Relevant here, a panel of the Court of Appeals recently examined a notice of lis pendens in light of the *Luis* decision and held that "*Luis* does not provide any guidance on whether a lis pendens notice should be treated for Sixth Amendment purposes like a court-ordered freeze," which constitutes a pretrial restraint under the law. *United States v. Thomas*, --- F. App'x ---, No. 16-4069, 2018 WL 4846325, at *3 (3d Cir. Oct. 4, 2018). Hence, the Court must look to the present facts and circumstances to determine if the notices are serving as a pretrial restraint.

Here, Defendant admits that he was advised by Government counsel that if he is able to sell the real estate, "the Government will not object so long as the transfer is arms-length and the funds are transferred to the Seized Asset Deposit Fund." (Crim. No. 17-122, Docket No. 33 at 13). Defense counsel continues that the prosecution's "assurance, which we can provide to a buyer, will remove any concerns about a cloud on the title." (*Id.*). While Defendant complains that he will not receive any proceeds if the properties are sold, he has failed to demonstrate that comments

by a federal prosecutor constitute a lawful pretrial restraint on his interest in the parcels.[5] In this regard, this record is devoid of any evidence that there has been a finding of probable cause that Defendant's interest in the real estate is subject to forfeiture which would justify the Government restraining the funds from any sales, as has been suggested. *See Kaley*, 134 S.Ct. at 1095 (a pretrial restraint is constitutionally authorized upon a finding of "probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime."). Specifically, the case against Defendant's wife containing forfeiture allegations as to her interest in the real estate was not approved by the grand jury as it was initiated via an Information filed by the U.S. Attorney and this Court's Order of Forfeiture in her case expressly forfeits only her interest in the properties, without specifying if the properties are directly forfeitable or substitute assets. (*See* Crim. No. 17-19, Docket No. 15). On the other hand, the grand jury charged Defendant with three counts of filing false tax returns and did not make any forfeiture allegations against him. (Crim. No. 17-122, Docket No. 1). Further, the properties have not been seized via a seizure warrant authorized by a U.S. Magistrate Judge upon a finding of probable cause like the challenged bank accounts at issue in the civil forfeiture action. (Civ. A. No. 15-1274, Docket No. 1). Finally, both the ancillary and civil forfeiture proceedings have been stayed pending the outcome of this criminal case. (*See* p. 6, *supra*). Therefore, the Court holds that the lis pendens notices are not serving as a pretrial restraint given the specific circumstances of this case and are not impairing Defendant's Sixth Amendment right to counsel. *See Thomas*, 440 F. App'x at 152.

---

[5] In fact, one of the properties is currently being marketed for sale; the second property is being rented; and Defendant is living in the third property. (Civ. A. No. 15-1274, Docket No. 20). Given his limited employment, it appears that Defendant does not have sufficient means to continue to maintain these three residences now that his wife is incarcerated and not contributing toward the expenses. (*Id*.). As the Court stated at the hearing, the parties should be working together to market and sell these properties. (Crim. No. 17-122, Docket No. 130 at 37).

For all of these reasons, Defendant's motion for a *Luis* hearing is denied, without prejudice, because he has not met his burden to demonstrate that his Sixth Amendment rights are being violated by a pretrial restraint of his assets.

*B. Early Disclosure of Jencks Materials*

The next dispute between the parties involves Defendant's request for early disclosure of Jencks Act materials, wherein he seeks the production of such materials thirty days prior to trial. (Docket Nos. 109; 129). The Government opposes such request but represents that it will produce all such materials at least ten days prior to trial but may make a partial production in advance of that deadline. (Docket Nos. 118; 129). In this Court's estimation, Defendant's motion is without merit and must be denied.

It is well established that the Government is permitted to withhold pure Jencks Act materials until after a witness testifies on direct examination, 18 U.S.C. § 3500(b), and the Court is precluded from ordering production until that time. *United States v. Maury*, 695 F.3d 227, 247-48 (3d Cir. 2012). Additionally, "the fact that the Government has made early disclosures of this material to the defendants does not constitute a waiver of the Jencks Act and does not allow the defendants any rights they would not otherwise have with respect to the materials." (Crim. No. 17-122, Docket No. 106 (quoting *United States v. Kubini*, 304 F.R.D. 208, 219 (W.D. Pa. 2015) (further citations omitted)). However, courts have long promoted and encouraged early disclosure of Jencks Act materials by the Government in order to avoid delays at trial. *See Maury,* 695 F.3d at n.18 ("Despite this limitation, many federal prosecutors routinely turn over Jencks material a few days before the witness testifies.").

The same is true here as the Court has already advised the parties on the record that, when it enters its Pretrial Order, it will set a deadline for the Government to produce *Brady*, *Giglio*

impeachment materials and Rule 404(b) evidence by a date certain "about a month ahead of trial." (Docket Nos. 76 at 6-7; 101-102; 106 at 1-2). The Court's Pretrial Order will also encourage the Government to produce its Jencks materials by the same deadline. Accordingly, as the Court lacks the authority to grant the requested relief, Defendant's motion for additional discovery seeking early disclosure of Jencks Act materials is denied.

### C. Redacted Version of Matthews International Memorandum

Lastly, Defendant seeks an unredacted version of a report from Matthews International detailing Cynthia Mills' embezzlement scheme which was produced to the defense after the Court's Memorandum Opinion of March 19, 2018. (Docket Nos. 109; 129). The Government argues that the document was appropriately redacted in light of the Court's ruling that information pertaining to embezzlement during prior tax years not at issue in this case are not discoverable. (Docket Nos. 118; 129). The Court agrees with the Government's position and sees no basis to reconsider its prior rulings. *See United States v. Kubini*, Crim. No. 11-14, 2018 WL 4282852, at *5 (W.D. Pa. Sept. 7, 2018) ("The Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice.") (citations omitted). Again, the Government did not waive any of its rights by selectively disclosing materials to the defense which are not otherwise discoverable at this stage of the case. (Crim. No. 17-122, Docket No. 106 (quoting *Kubini*, 304 F.R.D. at 219)). With that said, the Court further holds that to the extent that the redacted portions of the memorandum constitute *Brady*, *Giglio*, impeachment materials or Rule 404(b) evidence, the same shall be produced by the deadline to be established by the Court in its Pretrial Order. Similarly, if the unredacted portions are deemed Jencks materials, the Court strongly encourages

the Government to produce it by the same deadline. Thus, Defendant's motion for additional discovery seeking an unredacted version of this memorandum is denied.

*D. Conclusion*

Based on the foregoing, Defendant's Motions for Additional Discovery (Crim. No. 17-122, Docket No. [109]), and for a *Luis* Hearing (Civ. No. 15-1274, Docket No. [14]) are DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: November 20, 2018

cc/ecf: All counsel of record.

Gary Mills c/o Jed Silversmith, Esq.